Fourth case for this morning is Brinley v. Acting Commissioner Berryhill. Mr. Vrana. Thank you, Your Honor. May it please the Court. In this Social Security case, the administrative law judge made three legal material errors, any one of which makes a remand necessary. First, the ALJ found that Ms. Brinley has moderate difficulties with social functioning, but failed to include that in his residual functional capacity assessment or in the hypothetical question to the vocational expert. Secondly, the administrative law judge found that Ms. Brinley has moderate difficulties with concentration, persistence, or pace, but failed to include that in either the residual functional capacity assessment or in the hypothetical question to the vocational expert. And thirdly, the ALJ failed to evaluate, he commented about, but he failed to evaluate a statement from Ms. Brinley's husband about things that she could do, things that she couldn't do. And all three of those are legal errors. So your opponent, the commissioner, argues that even though he doesn't talk about the social functioning difficulties, he, I guess I must say, implicitly addresses it by putting limitations into the RFC to keep stress down. Or to keep, you know, the kinds of activities that make her depressed and anxious and so on. Right. And that's their argument. And I think that fails to be true. If that were done, would that be a good argument? I want to know whether you're saying that's not a good argument, period, or whether it just didn't happen here and so it's not helpful. I think that the case law and the regulations and the rulings say that those things have to be explicitly, well, either explicitly included or in some other way fully accounted for. And that's true of both the moderate difficulties with social functioning and that's also true with the moderate difficulties in concentration, persistence, or pace. With respect to the social functioning, they're saying, well, you just take away her stress and then she'll be fine in interacting appropriately with other people. And first of all, the ALJ never said that. And secondly, I don't think if he had that there's any evidence of that. If he had, we'd be talking about that. Because there are lots of notes about her inability to control her anger. She even would get angry in front of her kids. She apparently was not a very good co-worker, according to the evidence. Does the evidence suggest she got fired from a couple of jobs for this? Well, you know, I don't know what poor job performance was. She had been told a couple months before that that she would be let go if she didn't start playing nice. Start what? If she didn't start playing nice were her words to her counselor, you know, what exactly she was told. But clearly the import is she wasn't getting along. She was being a problem co-worker. And, you know, you better shape up and be a team player or we're going to have to let you go. So I think those kinds of problems have nothing to do or only tangentially related to problems with stress. Mr. Verano, would it be correct to say that I'm looking at the residual functional capacity that the ALJ imposed here. Things like limited to simple routine and repetitive tasks, low stress, only occasional decision making, only occasional changes. Those are phrases one sees in a lot of social security cases where there are various kinds of mental health issues. And if I understand your argument correctly here, it is that those particular accommodations don't actually fit with the social functioning and the concentration, persistence, or pace issues. Is that right? Absolutely. And especially, yeah, there's just a disconnect. With the social functioning, you know, if the ALJ had said, well, to account for her moderate difficulties in social functioning, I limit her to no contact with the public, no more than occasional contact with co-workers and supervisors, we wouldn't be arguing that. No, I understood your argument looking against RFC, essentially to say that you could be in a job that called for simple routine and repetitive tasks, but maybe you were part of a team of 30 doing it, which would not really fit her. Exactly. So, yeah, with the social functioning, I don't see a word in that RFC assessment that comes close to accounting for difficulties with social functioning. And then the hypothetical question did track the RFC, so we're not arguing about that, but it's just both of them fail to account in any way for the difficulties with social functioning. With the concentration, persistence, and pace, and this court has issued the O'Connor-Spinner decision, yurt pretty much was followed along with O'Connor-Spinner. Then came Varga, and what happened in Varga was you had, an ALJ had found moderate difficulties with concentration, persistence, or pace, and then said, okay, simple routine, repetitive, and no fast-paced production. So it went beyond what had happened in O'Connor-Spinner and yurt, and this court said, that's not good enough because we don't know what fast-paced production is. You know, that's too vague. It's too vague because sometimes we see that a person's own pace, when you confine it to that, where somebody is capable of doing things, but they can't do it in an assembly line because the next person down is going to be waiting or else stacked up, I don't know which. But this is where I see the problems in all of these. There's a person that can be very capable of doing a job, and that's when we talk about laundry and doing some other things that if you're not, somebody's not pushing you, you can do it okay. Right, and that's the same problem, you know, in Varga the problem was fast-paced production. In this case, the problem is fixed-paced production, but the problem is the same in that you're saying, okay, we're going to let this person work at their own pace. Well, my goodness, you know, if that pace isn't adequate, they're not going to be on that job for very long. Well, it would have to be the kind of job that you could be paid almost for piecework, you know, and if you don't do very many things during the day, you don't get paid very much, and if you do more, you get paid more. Right, right. Is it correct, counsel, that the methadone use here looked pretty dramatic? I don't know, maybe I've missed some of the changes over history, over the years in question, but that she was up to 60, then 80, and then 90 milligrams a day? Right, all prescribed. Yeah, yeah, of course. Oh, yeah, and then 90 milligrams of methadone a day is a lot. But, exactly, that's more familiar with terminal illness pain, right? Right, right. Now, did she get off of methadone or reduce it dramatically? She, with the help of her doctor, weaned herself off of that, so, yeah. And she had a long, pretty steady work history, despite whatever frictions there may have been, right? Right, right. And there was a time, if you look at her entire work record, her early, like her 20s, were not huge numbers, but she was working, and, you know, why those numbers were small, it doesn't say in the record, per se, she did have children. That's my guess. I see I'm into my rebuttal time, but I also, I don't want to waive my third argument, because I think there, the statement of the husband, ALJ recounts it, but he doesn't say, I accept it, I reject it, or I accept these parts and reject these parts. All right. Thank you very much. Mr. Truitt. May it please the court, Eric Truitt on behalf of the committee here. This case is unusual because the ALJ found no sizable evidence of any difficulty in sustaining concentration, persistence, or pace, and no substantial functioning issues. That's on transcript page 32. So we're not dealing with cases analogous to ones that this court has decided before. What do we do with the ALJ's finding of moderate difficulties? We look exactly to the ALJ's reasoning. The ALJ had a very specific reason in both categories for assigning a rating of moderate. You must remember, both state agency consultants, unlike the vast majority of cases that Brennan Lee relies, rated her as mild. The ALJ knocked it up one level for very specific reasons, and that can be found on transcript page 22. So the only reason the ALJ said that justified a rating of moderate was that she indicated some social issues with respect to her anxiety disorder. And then later on in the decision, the ALJ noted that increased stress affects her pain level and may cause panic attacks. And then there's a summary paragraph on transcript page 32 that tries to draw it all together. So it should be noted in the function reports that Brennan Lee submitted and her husband submitted, there are specific questions about social functioning in the workplace. So if you look at transcript page 28, how well do you get along with authority figures? Well, have you ever been fired or laid off from a job because of problems getting along with other people? No. The husband's report, how well does the disabled person get along with authority figures? No problem here. Has she ever been fired or laid off from a job because of problems getting along with other people? No. So there's not, and the ALJ said, the sentence that I read at the beginning of the argument, the ALJ in rating moderate was not saying there's this broad spectrum of social functioning issues. There's a very narrow problem that the ALJ attributed to stress, and then the ALJ tried to address the stress by removing production quotas from the workplace. So there would be no need, for example, to restrict a claimant from interacting with the public because the ALJ did not find that she had any difficulty. Why would the ALJ include that in the RFC if that wasn't the basis of the moderate rating? So again, the important thing to look at here is at the initial and reconsideration levels, she was assigned a rating of moderate by both states, I mean mild by both state agencies. Surely you don't ask us to base a decision on that, do you? No, no. What I'm saying is that the category of moderate is a broad spectrum, all the way from the borderline of mild to the borderline of market. And here the ALJ's thesis was that she really doesn't have widespread or broad problems in the area of concentration, persistence, or social functioning. She has these very narrow issues which justify a rating of moderate, and then I'll address that issue later on the RFC finding. But it's not as if the record is replete with evidence of substantial difficulties in either of those domains. But he does find the moderate difficulties with social functioning. Yes, but it's also important to remember that. And doesn't take them into account in the RFC. So if he's found them, why doesn't he have to take them into account in the RFC? He didn't have to find them if he didn't want to, but he did find them. And then that's why on transcript page 32, page 15 of the ALJ's decision, if you look at the second paragraph beginning with, as to the claimant's mental impairments. That's the ALJ's explanation linking together the findings at steps two and three in the RFC finding. So when you said page 32... Page 32 of the transcript, page 15 of the ALJ's decision. It's AP 20. It has, I think, four different numbers on that page. Page 15 of 17, AP 20, 32, and 33. Document 8-2 of 81. Yes, it is stamped in many different ways. But the paragraph that I'm referring to begins with, as to the claimant's mental impairments. Okay, so it's the top of the page that we've identified. But he's not talking here about how he's integrating the finding of moderate difficulties with social things. The kinds of things he's talking about, going out to shop, talking with friends, leading the Girl Scout Troop, are off and on things. He dismisses the idea of suicidal ideation. No one's using GAF scores anymore anyway, so we don't need to worry too much about that. It's a very contradictory opinion if you really try to take him seriously. I don't think so, because it's certainly, first of all, it's important to recognize that moderate means fair or adequate. So by rating moderate, you're not necessarily implying that this person is unable to do anything. Why would you rate it moderate if you found little evidence of problems, which he says in the paragraph that you've been referring to? He rated it moderate because he thought that the anxiety from stress warranted further consideration. That's the explanation at steps 2 and 3. He says she has good social functioning overall, but she has reported issues. And there's other evidence in the record. Well, there is other evidence in the record, but again, he's, you know, the posture in the district court and on this appeal, it's not challenging the substantial evidence of ALJ's finding. No, it's just saying, what do you mean, ALJ? Does she really have these moderate difficulties? And if so, why isn't it in the RFC? Well, again, the purpose of rating moderate at steps 2 and 3 is to basically provide further explanation down the line, which I believe the ALJ did in that paragraph that I cited. When you rate someone as moderate, that just means that you further assess their mental RFC. The ratings are used at steps 2 and 3 to filter out the cases at either end of the poll. So if someone has mild everything, it would be a non-severe mental impairment and no further analysis needed. If it's too or more marked, the person is disabled, you're done. So the ALJ, again, the state agency said mild. The ALJ said, I'm going to give some credence to your complaints about anxiety, even though overall I don't see substantial social functioning issues here. So it's not contradictory, it's just the ALJ's way of... Well, again, moderate means fair. Let me ask you, looking at this paragraph that you're focusing on, I guess I noticed something for the first time this morning that I hadn't noticed before. I don't think I've seen an ALJ before say that a person's ability to watch and follow TV shows shows sufficient ability to concentrate in full-time work. Is that common? I mean, daily activities, under the old regulations, the one in effect here, daily activities were a separate category. But it's the TV shows that Judge Hamilton talks about. A lot of people can plant themselves in a chair. I'm going back to Marshall McLuhan, and it's about as passive an activity as there is. It is passive, but compared to... And usually they list a variety of daily activities as opposed to one. But compared to, for example, the amount of concentration it takes to mop a floor or something like that, it's not. The two things that he cites when he says, nor is there sizable evidence of any difficulty in sustaining concentration, persistence, or pace, and he cites two things. One, she can watch TV, and two, she can play online games. Doesn't that strike you as absurd? That's not the only evidence because there's also the only doctors who evaluated this said it didn't even raise to the level of moderate. Well, but this is the paragraph that you wanted us to look at. Well, no, this paragraph shows how the specific reasons the ALJ gave a rating of moderate rather than mild relate to the RFC funding. When you assign a rating, moderate is itself a broad term. Then the area of concentration, persistence, or pace is also broad. Is your problem with concentration? Is it with persistence? Is it with pace? You need a little more detail. The ALJ then provided that additional detail. And this woman was taking methadone at levels typically given in hospice care at a time when the ALJ found she was capable of full-time productive work, right? That issue has not been briefed. The ALJ's findings with respect to her physical impairments and her symptoms and side effects, those have never been at issue here. Ms. Brindley's entire posture has been to accept the ALJ's findings on their face and claim that there's some sort of inconsistency with what the ALJ found at Step 2 and found later on. But when you consider the breadth of the categories, both moderate as well as concentration, persistence, or pace, it makes sense to look at the specific reasons the ALJ gave. And for those reasons, the Commissioner respectfully requests that you affirm her decision. All right. Thank you very much, Mr. Truitt. Anything further, Mr. Vrana? Just real quickly. As far as the methadone use being not briefed, that's in our facts section. And as far as the physical effects, we are challenging the ALJ's assessment of both physical and mental effects, and I think I've explained that pretty well. That's in your reply brief. You said to the extent you were talking about the husband's report, that brought the physical back into it. Right. So this is not strictly about the first two issues. It also includes the third. Okay. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.